Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DR. ARASH EMAMI as EDWARD N.'S ATTORNEY-IN-FACT,<br><br>*Plaintiff,*<br><br>v.<br><br>EMPIRE HEALTHCHOICE ASSURANCE, INC. and EXCAVATORS UNION LOCAL 731 WELFARE FUND,<br><br>*Defendants.* | Civil Action No. 18-679 (JMV)<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

This case concerns an insurance coverage dispute between Plaintiff Dr. Arash Emami ("Dr. Emami"), as Edward N.'s ("Patient") attorney-in-fact (collectively "Plaintiff"), and Defendants Empire Healthchoice Assurance, Inc. ("Empire") and Excavators Union Local 731 Welfare Fund ("the Fund") (collectively, the "Defendants"). In this Employee Retirement Income Security Act ("ERISA") matter, Plaintiff claims that he is entitled to greater payment from Defendants pursuant to Patient's health insurance benefits. Currently pending before the Court is Defendant Empire's motion to dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). D.E. 26. The Court reviewed the parties' submissions in support and in opposition,[1] and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R.

---

[1] Plaintiff's Amended Complaint will be referred to as "Am. Compl." (D.E. 26); Defendant Empire's brief in support of its motion will be referred to as "Def. Br." (D.E. 30-1); Plaintiff's brief in opposition will be referred to as "Pl. Opp." (D.E. 37); and Defendant Empire's reply brief will be referred to as "Def. Reply." (D.E. 42).

78.1(b). For the reasons stated below, Defendant's motion to dismiss is **GRANTED in part** and **DENIED in part**.

I.     FACTUAL BACKGROUND[2]

Plaintiff's Health Insurance Plan

At all relevant times, Patient had health insurance through a multiemployer ERISA governed welfare benefit plan ("the Plan"), The Excavators Union Local 731 Welfare Fund. Am. Compl. ¶ 9. The Plan contains the following language regarding out-of-network coverage:

> The Plan provides hospital and medical benefits that are administered by Empire BlueCross BlueShield ("Empire"). Benefits are provided under Empire's Preferred Provider Organization ("PPO") which offers 100% coverage of eligible In-Network hospital expenses with no annual deductible and no co-payments; and 100% coverage of eligible In-Network medical expenses with a $10,000 per visit co-payment. The PPO also has an Out-of-Network benefit. However, Out-of-Network services are subject to additional charges including an annual deductible, coinsurance and charges over the Empire maximum allowed amount."
>
> [...]
>
> Out of Network
> - Deductible - $200.00 Individual/$500.00 Family
> - Coinsurance – 30%
> - Coinsurance Stop Loss $5,000 Individual $12,500 Family ($1,500 Individual $3,750 Family out-of-pocket)

---

[2] The factual background is taken from Plaintiff's Amended Complaint, D.E. 26, as well as any documents referenced, relied on, or attached to Plaintiff's Amended Complaint. When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Additionally, a district court may consider "exhibits attached to the complaint and matters of public record" as well as "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Here, Plaintiff's claims are based on Plaintiff's ERISA governed welfare benefit plan under Defendant Excavators Union ("the Plan"). *See* Am. Compl., Ex. A. Therefore, the Court considers the Plan.

- Balance Billing – 100% of the amount over the Empire allowed amount

Most Out of Network services are subject to charges including an annual deductible, coinsurance and amounts over the Empire maximum allowed amount. You are responsible for the annual deductible, 30% of the Empire maximum allowed amount and 100% of the amount over the Empire maximum allowed amount. These are **your** out of pocket expenses and **your** responsibility to pay.

Am. Compl., Ex. A at 8, 31 (emphases in original).[3]

Second, the Plan defines the Maximum Allowed Amount ("MAA") as follows:

[T]he maximum amount of reimbursement Empire will pay for services and supplies:

- That meet our definition of Covered Services, to the extent such services and supplies are covered under your Plan and are not excluded;
- That are Medically Necessary; and
- That are provided in accordance with all applicable preauthorization, Medical Management Programs, or other requirements set forth in your Plan.

You will be required to pay a portion of the Maximum Allowed Amount to the extent you have not met your Deductible, or have a Copayment or Coinsurance. In addition, when you receive Covered Services from an Out-of-Network Provider, you may be responsible for paying any difference between the Maximum Allowed Amount and the Provider's actual charges. This amount can be significant. When you receive Covered Services from a Provider, We will, to the extent applicable, apply claim processing rules to the claim submitted for those Covered Services. These rules evaluate the claim information and determine, among other things, the appropriateness of the procedure and diagnosis codes included in the claim. Applying these rules may affect our determination of the Maximum Allowed Amount. Our application of these rules does not mean that the Covered Services you received were not Medically Necessary. It means Empire has determined that the claim submitted was inconsistent with procedure coding rules and/or our reimbursement policies. For example, your Provider may have submitted the claim using several procedure codes when there is a

---

[3] This Opinion's page citations citing to the Plan reference the page numbers of Amended Complaint's Exhibit A as opposed to the page numbers of the Plan itself.

3

single procedure code that includes all of the procedures that were performed. When this occurs, the Maximum Allowed Amount will be based on the single procedure code rather than a separate Maximum Allowed Amount for each billed code. Likewise, when multiple procedures are performed on the same day by the same Provider or other healthcare professional, Empire may reduce the Maximum Allowed Amounts for those secondary and subsequent procedures because reimbursement at 100% of the Maximum Allowed Amount for those procedures would represent duplicate payment for components of the primary procedure that may be considered incidental or inclusive.

For Covered Services that you receive from an Out-of-Network Provider, the Maximum Allowed Amount will be based on Empire's Out-of-Network Provider fee schedule/rate or the Out-of-Network Provider's charge, whichever is less. *Empire's Out-of-Network Provider fee schedule/rate may be accessed by calling the Customer Service number on the back of your identification card.* The Maximum Allowed Amount on Empire's Out-of-Network Provider fee schedule/rate has been developed by reference to one or more of several sources, including the following:

    1. Amounts based on Empire's In-Network Provider fee schedule/rate;
    2. Amounts based on the level and/or method of reimbursement used by the Centers for Medicare and Medicaid Services, unadjusted for geographic locality, for the same services or supplies. Such reimbursement amounts will be updated no less than annually;
    3. Amounts based on charge, cost reimbursement or utilization data;
    4. Amounts based on information provided by a third party vendor, which may reflect one or more of the following factors: i) the complexity or severity of treatment; ii) level of skill and experience required for the treatment; or iii) comparable Providers' fees and costs to deliver care; or
    5. An amount negotiated by the Claims Administrator or a third party vendor which has been agreed to by the Provider.

    This may include rates for services coordinated through case management. Providers who are not contracted for this Plan, but contracted for other Plans with Empire, are also considered Out-of-Network. The Maximum Allowed Amount reimbursement for services from these Providers will be based on Empire's Out-of-Network Provider fee schedule/rate as described above unless the contract between Empire and that Provider specifies a different

> amount. Unlike In-Network Providers, Out-of-Network Providers may send you a bill and collect for the amount of the Provider's charge that exceeds Empire's Maximum Allowed Amount. You are responsible for paying the difference between the Maximum Allowed Amount and the amount the Provider charges. This amount can be significant. Choosing an In-Network Provided will likely result in lower out of pocket costs to you.

*Id.* at 113-114 (emphasis added).

Third, the Plan contains the following language reserving discretionary authority to the Fund's Board of Trustees to interpret the Plan:

> The Board of Trustees governs the Welfare Fund in accordance with an Agreement and Declaration of Trust. The Board of Trustees has the sole and absolute discretionary authority to interpret the terms of the Plan, determine benefit eligibility, and resolve ambiguities or inconsistencies in the Plan. All determinations and interpretations made by the Board of Trustees and/or its duly authorized designee(s) shall be final and binding upon all participants, beneficiaries and any other individuals claiming benefits under the Plan.

*Id.* at 182.

Fourth, the Plan includes the following time limitation provision regarding beneficiaries' right to bring suit in state or federal court:

> If your claim for benefits is ignored or denied, in whole or in part, you may file suit in a state or federal court. A lawsuit for benefits denied under this coverage can be filed no earlier than 60 days after the claim was filed, and *no later than two years from the date that the services were received.*

*Id.* at 122 (emphasis added).

Fifth, the Plan contains information regarding its internal appeals process. Under a section titled "How to Submit a Claim for Benefits and How to Submit an Appeal," the Plan states: "If your claim is denied in whole or in part, or if you disagree with the decision made on a claim, you may ask for a review." *Id.* at 56. Further on in this section, the Plan contains the following language regarding the requirement to exhaust administrative remedies prior to filing a lawsuit:

5

> Please note that you may not start a lawsuit to obtain benefits until after you have requested a review and a final decision has been reached on review, or until the appropriate time frame described above has elapsed since you filed a request for review and you have not received a final decision or notice than an extension will be necessary to reach a final decision. The law also permits you to pursue your remedies under section 502(a) of the Employee Retirement Income Security Act without exhausting these appeal procedures if the Plan has failed to follow them.

*Id.* at 58.

Under a subsequent subsection titled "ERISA Rights," the Plan provides that "[a]n appeal must be filed within one hundred eighty (180) calendar days from the date of receipt of notice of a denial or services." *Id.* at 117. Further, the Plan reiterates the following: "If we deny a claim, wholly or partly, you may appeal our decision. You will be given written notice of why the claim was denied, and of your right to appeal the decision. You have 180 days to appeal our decision." *Id.* at 122.

In addition to the Plan, the explanation of benefits, D.E. 30-4, issued on August 25, 2017, states: "You must submit your appeal within 180 calendar days after the statement date on this EOB. If you fail to submit your appeal within this timeframe, your appeal will be rejected and the initial decision will be upheld." D.E. 30-4 at 3.

Patient's Medical Care

Patient received medical services from Dr. Emami and other medical providers within University Spine Center on three dates: February 1, 2016, March 28, 2016, and June 26, 2017. Am. Compl. ¶ 10. On February 1, 2016, Patient underwent a L4-L5 lumbar epidural steroid injection under fluoroscopy. *Id.* ¶ 11. Patient was billed $5,372, and Defendants allowed reimbursement totaling $839.32. *Id.* ¶¶ 12-13. On March 28, 2016, Patient underwent surgical procedures performed by Dr. Emami and an assistant surgeon unaffiliated with University Spine

6

Center. *Id.* ¶ 14. Patient was billed $246,369 for Dr. Emami's portion of the services, and Defendants allowed reimbursement totaling $22,490.59. *Id.* ¶¶ 15-16. On June 2017, Patient underwent two injections. *Id.* ¶ 17. Patient was billed $6,258, and Defendants allowed reimbursement totaling $998.39. *Id.* ¶¶ 18-19.

In total, Patient was billed $257,999 and Defendants allowed reimbursement totaling $24,287.30. *Id.* ¶ 20. The difference is what is in dispute in this case. Additionally, Patient's surgical procedures on the March 28, 2016 date of service, described by CPT code 22840, were denied as "investigational and/or not medically necessary." *Id.* ¶ 22. Plaintiff disputes this particular determination in addition to the calculations for all three dates of service. *Id.* ¶ 23.

Originally, University Spine Center had an assignment of benefits from Patient. Am. Compl. ¶ 25. In response to the issue of standing related to "anti-assignment clauses," Patient designated Dr. Emami as his attorney-in-fact through a notarized power of attorney on or about June 21, 2018. *Id.* ¶ 26. According to the Amended Complaint, the Power of Attorney "expressly authorized Dr. Emami to file suit against the Patient's '... insurance carrier, Plan Sponsor, Plan Administrator, Claims Administrator, Third Party Administrator, or other similar parties' to receive and collect money or benefits due for services rendered by University Spine Center to Patient/Principle 'at any time.'" *Id.* ¶ 27.

## II. PROCEDURAL HISTORY

On January 17, 2018, University Spine Center, based on its assignment of benefits, filed a Complaint against Empire Blue Cross Blue Shield ("Empire BCBS"). D.E. 1. On March 13, 2018, Empire BCBS filed a motion to dismiss the Complaint which, among other things, asserted that University Spine Center lacked standing because the Plan had an anti-assignment provision. D.E.

6. On March 23, 2018, University Spine Center filed opposition, D.E. 9, to which Empire BCBS replied, D.E. 10.

On September 26, 2018, University Spine Center filed a motion for leave to file an Amended Complaint. D.E. 12. Empire BCBS opposed that motion and, alternatively, cross-moved to disqualify University Spine Center's counsel. D.E. 15. On January 11, 2019, Magistrate Judge Waldor granted University Spine Center leave to amend and denied Empire BCBS's motion to disqualify counsel. D.E. 24; D.E. 25.

On January 14, 2019, Plaintiff Dr. Emami filed an Amended Complaint. D.E. 26. The Amended Complaint alleged one count for recovery of benefits under ERISA § 502(a)(1), codified at 29 U.S.C. § 1132(a)(1)(B). D.E. 26. Plaintiff alleged that the "Maximum Allowed Amount" for out-of-network providers such as Dr. Emami is defined in the Plan as a "fee schedule/rate," which is developed through the consideration of five factors. Am. Compl. ¶ 35-36. Plaintiff argued, among other things, that the Plan's terms regarding the "fee schedule/rate," are "so vague and indefinite as to be illusory." *Id.*

On February 11, 2019, Defendant Empire filed the current motion to dismiss. D.E. 30. Plaintiff filed opposition, D.E. 37, to which Defendant Empire replied, D.E. 42.

### III. LEGAL STANDARD

Defendants seek to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) permits a court to dismiss a complaint that fails "to state a claim upon which relief can be granted[.]" For a complaint to survive dismissal under the rule, it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the

8

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).[4]

In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

## IV. ANALYSIS

Defendant Empire argues that (1) Plaintiff failed to state a claim under section 502(a)(1)(B) of ERISA, (2) Plaintiff's ERISA claims for the 2016 dates of service are time-barred, and (3) Plaintiff failed to exhaust his administrative remedies as required under ERISA for the 2017 date of service.

---

[4] While Plaintiff cites to *Iqbal* and *Twombly* in his opposition, D.E. 37, Plaintiff also relies extensively on prior decisions and cites to a standard that is no longer applicable. *See, e.g.*, Pl. Opp. at 3 (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). In particular, Plaintiff cites to the *Connelly* standard that was overruled by *Iqbal* and *Twombly*. Pl. Opp. at 3. Plaintiff relies on the outdated rule that a motion to dismiss "**must be denied** 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* at 3, 8 (emphasis in original) (quoting *Scheuer*, 416 U.S. at 236). Plaintiff also erroneously alleges that "it is not necessary to plead the facts that serve as the basis for the claim." *Id.* at 3 (citing *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 446 (3d. Cir. 1977); *In Re Midlantic Corp. Shareholders Litigation*, 758 F. Supp. 226, 230 (D.N.J. 1990)). Plaintiff's counsel litigates regularly in federal court. Misstating the applicable standard of review is inexcusable.

ERISA governs the rights and obligations of beneficiaries of and participants in employee benefit plans. ERISA section 502(a)(1)(B) allows a beneficiary or participant to bring a civil action to recover benefits due to her under a plan. Section 502(a)(1)(B) provides as follows:

> A civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1)(B). A plaintiff must prove the following elements to prevail under a section 502(a)(1)(B) cause of action: "(1) the plan is covered by ERISA; (2) the plaintiff is a participant or beneficiary of the plan; and (3) the plaintiff was wrongfully denied a benefit owed under the plan." *Guerrero v. FJC Sec. Servs. Inc.*, 423 F. App'x 14, 16 (2d Cir. 2011) (citing *Giordano v. Thomson*, 564 F. 3d 163, 168 (2d Cir. 2009)). "Section 502(a)(1)(B) deals exclusively with contractual rights under the plan." *Varity Corp. v. Howe*, 516 U.S. 489, 521 n.2 (1996).

### A. Failure to State a Claim

Defendant maintains that Plaintiff's claim for unpaid benefits must be dismissed because it fails to plausibly state a claim. Defendant argues that the Amended Complaint is "rife with conclusory allegations, but short on any factual allegations for how Empire, specifically, violated the Plan." Def. Br. at 12. Defendant takes issue with Plaintiff's allegations that the terms of the Plan are "illusory," "vague and indefinite," and that the amount reimbursed by Defendants is "indicative of ... an arbitrary and capricious application of plan terms." *Id.* at 14-15.

The Court finds that Plaintiff's Amended Complaint fails to meet the plausibility threshold. Notably, the plain language of section 502(1)(a)(B) requires a plaintiff to demonstrate his entitlements to "benefits due to him *under the terms of the plan.*" 29 U.S.C. § 1132(a) (1)(B). The closest Plaintiff comes to stating a plausible claim for wrongful denial of benefits is asserting that since the fee schedule/rate lists "five different factors which may have been considered in

developing this alleged fee schedule/rate," the Plan's terms are "so vague and indefinite as to be illusory." Am. Comp. ¶¶ 35-36. While Plaintiff at least refers to a specific provision in the Plan, Plaintiff merely sets forth allegations in a conclusory fashion. Plaintiff fails to provide any, much less sufficient, factual support for his allegations. *See LeMoine v. Empire Blue Cross Blue Shield*, No. 16-6786, 2018 WL 1773498 at *6 (D.N.J. Apr. 12, 2018) ("To be sure, Plaintiff adequately sets forth the date of her injuries and the general dates of hospitalization and rehabilitation. Yet, as to which actual portions of the plan were violated, when they were violated, or how they were violated, Plaintiff fails to provide plausible factual allegations."). *See also Atl. Plastic Hand Surgery, PA v. Anthem Blue Cross Life & Health Ins. Co.*, No. 17-4600, 2018 WL 1420496, at *15 (D.N.J. Mar. 22, 2018) (finding plaintiff's Section 502(a)(1)(B) claim deficient "based on [plaintiff's] failure to identify any provision in the Plan" that required Defendants to pay higher reimbursements).

Furthermore, Plaintiff's claim in his Opposition that Defendant never provided the fee schedule/rates cannot be considered by the Court because Plaintiff failed to make this allegation in his Amended Complaint.[5] *Pl. Opp.* at 8. In ruling on a motion to dismiss, a district court is "not permitted to go beyond the facts alleged in the Complaint and the documents on which the claims made therein were based." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1424-25 (3d Cir. 1997).

---

[5] In addition, the Plan clearly indicates that "Empire's Out-of-Network Provider fee schedule/rate may be accessed by calling the Customer Service number on the back of your identification card." Am. Compl., Ex. A. at 114. Plaintiff, however, does not indicate that he ever followed this simple procedure and obtained a copy of the fee schedule. Moreover, *Zack v. McLaren Health Advantage Inc.*, on which Plaintiff relies, does not indicate that the fee schedule/rate was available to beneficiary. 340 F. Supp. 3d 648, 655.

11

In sum, the Court will dismiss Plaintiff's section 502(a)(1)(B) claim on the basis of insufficient factual allegations.

### B. Statute of Limitations

Defendant argues that Plaintiff's claims related to the medical services Plaintiff received in 2016 are time-barred due to the Plan-imposed two-year statute of limitations. Def. Br. at 16-18. Specifically, Defendant alleges that the "Amended Complaint, *asserted by a new Plaintiff*, was filed on January 14, 2019; thus, the claims for the services rendered on February 1, 2016 and March 28, 2016 are time-barred." *Id.* at 17 (emphasis in original).

While ERISA section 502(a)(1)(B) provides that a participant or beneficiary may file a civil action to recover benefits, the statute does not provide a limitations period for filing such an action. 29 U.S.C. § 1132(a)(1)(B). Instead, courts normally use the statute of limitations from the most analogous state-law claim. *See Hahnemann Univ. Hosp. v. All Shore, Inc.*, 514 F.3d 300, 305-06 (3d Cir. 2008). Here, the most analogous New Jersey state-law cause of action time limitation is the six-year deadline for breach of contract actions. *See Mirza v. Ins. Adm'r of Am., Inc.*, 800 F.3d 129, 136 (3d Cir. 2015).

However, since plans governed by ERISA are contracts, the Third Circuit has found that "parties are allowed to contract for a shorter limitation period, so long as the contractual period is not manifestly unreasonable." *See Hahnemann*, 514 F.3d at 306. In the present case, the Plan imposes a shorter limitation period by clear terms:

> If your claim for benefits is ignored or denied, in whole or in part, you may file suit in a state or federal court. A lawsuit for benefits denied under this coverage can be filed no earlier than 60 days after the claim was filed, and *no later than two years from the date the services were received.*

12

Am. Compl., Ex. A. at 122 (emphasis added). A similar contracted time limit of two years has been deemed permissible in this District. *See Stallings ex rel. Estate of Stallings v. IBM Corp.*, No. 08-3121, 2009 WL 2905471, at *6 (D.N.J. Sept. 8, 2009) ("[T]he Court holds that nothing about the two year limitations period is 'manifestly unreasonable' because the period provided sufficient opportunity for the Plaintiffs to state a claim for benefits, the two year period is not substantially different from previously upheld three year periods ... and the period does not interfere with Congress's intent to protect ERISA beneficiaries and participants.") (citing *Klimowicz v. Unum Life Ins. Co. of Am.*, 296 F. Appx. 248, 251 (3d Cir. 2008)).

Plaintiff responds that when Defendants denied Plaintiff the full requested benefits, Defendants did not inform Plaintiff of the shortened, plan-imposed statute of limitations in the adverse benefit determination letter. Pl. Opp. at 10-12. As Plaintiff explains, a Department of Labor regulation requires plan administrators to include "a statement of the claimant's right to bring a civil action" following an adverse benefit determination. 29 C.F.R. § 2560.503-1(g)(1)(iv). *Mirza* held that this regulation "requires that adverse benefit determinations set forth any plan-imposed time limit for seeking judicial review." *Mirza*, 800 F.3d at 136. *Mirza* further held that failure to comply with this requirement will result in a plan's time limit being set aside in favor of the time limit from the most analogous state-law claim. *Id.* at 138. Therefore, Plaintiff alleges that since Defendants failed to include the Plan's two-year time limit in the adverse benefit determination letter, the Court must set aside the Plan's shortened time limit and apply New Jersey's six-year limit for breach of contract claims. Pl. Opp. at 12.

The Department of Labor regulation that Plaintiff cites refers specifically to "plan administrators" rather than "claims administrators." *See* 29 C.F.R. § 2560.503-1(g)(1)(iv) ("[T]he plan administrator shall provide a claimant with written or electronic notification of any adverse

13

benefit determination."). However, Plaintiff does not allege that Defendant is either the plan administrator or the claims administrator in the Amended Complaint. *See* Am. Compl. Since this distinction is not pled in the Amended Complaint, the Court does not reach this issue.[6]

The Court finds that Defendants should have conducted an analysis, at least in the first instance, as to the applicability of Federal Rule of Civil Procedure 15's relation back doctrine regarding the original Complaint in this matter. *See* FED. R. CIV. P. 15(c). Defendant failed to analyze why the relation back doctrine does not apply in both its brief in support of its motion to dismiss and in its reply. *See* Def. Br.; Def. Reply.

Accordingly, Defendant's motion to dismiss the 2016 service dates as time-barred is denied without prejudice.

### C. Exhaustion of Administrative Remedies

Lastly, Defendant asserts that Plaintiff's claim regarding the June 26, 2017 date of service must be dismissed because Plaintiff failed to exhaust administrative remedies. Def. Br. at 18.

ERISA provides that a beneficiary may bring a civil action in federal court to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of his plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B). However, the Third Circuit has long held that "[e]xcept in limited circumstances . . . a federal court

---

[6] Defendant made the argument in its April 30, 2018 Reply Brief, D.E. 10, pertaining to its first Motion to Dismiss, D.E. 6, that Defendant is a "claim administrator" as opposed to a "plan administrator," which is dispositive since the regulation at issue applies only to "plan administrators." However, a number of circuit cases have found that claims administrators or third-party administrators may be held liable if they exercise "actual control" over the benefits claims procedure. *See New York State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 798 F.3d 125, 132 (2d Cir. 2015); *LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs Inc.*, 703 F.3d 835, 844-45 (5th Cir. 2013); *Cyr v. Reliance Standard Life Ins. Co.*, 642 F.3d 1202, 1206 (9th Cir. 2011); *Gomez-Gonzales v. Rural Opportunities, Inc.*, 626 F.3d 654, 665 (1st Cir. 2010). As noted, however, the Court does not decide the issue at this time.

14

will not entertain an ERISA claim unless the plaintiff has exhausted the remedies available under the plan." *Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 249 (3d Cir. 2002) (citation omitted). The exhaustion requirement is "a judicial innovation fashioned with an eye toward 'sound policy.'" *Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 279 (3d Cir. 2007).

First, Defendant claims that the Amended Complaint "alleges no facts that Plaintiff or anyone else complied with the Plan's requirements, and, indeed, only conclusorily alleges that 'Plaintiff appealed Defendants' determinations, on multiple occasions, however, Defendants stood by the propriety of their denials.'" Def. Br. at 20; Am. Compl. ¶ 24. Plaintiff responds that it did properly allege that it had exhausted its administrative remedies in the Amended Complaint. Pl. Opp. at 13 (citing Am. Compl. ¶ 8 ("All conditions precedent to the institution of this action, *e.g.*, administrative appeals, have occurred, been performed, been exhausted, been waived, would be futile, or should otherwise be deemed exhausted pursuant to 29 C.F.R. § 2560.503-1.")).

Second, Defendant asserts that Plaintiff's claim regarding the 2017 date of service must be dismissed because "Plaintiff failed to appeal the claims determination for the payment of benefits in 180 days, as required under the Plan." Def. Br. at 21. The Plan states that "[a]n appeal must be filed within one hundred eighty (180) calendar days from the date of receipt of notice of a denial or services." Am. Compl., Ex. A. at 117. Defendant claims that although Plaintiff was on notice of the claim determination in August 2017, Plaintiff did not appeal that determination until April 17, 2018, which fell past the 180-day deadline. *Id.*

Plaintiff, in turn, asserts that Defendant violated Department of Labor regulations and thus has "lost its ability to dismiss Plaintiff's Complaint related to the 2017 dates of service for failure to plead exhaustion." Pl. Opp. at 13. Plaintiff adds that since Defendant failed to include a reference to the "specific plan provision on which the [adverse benefit] determination is based,"

15

Plaintiff shall "be deemed to have exhausted administrative remedies under the Plan." Pl. Opp. at 13. *See* 29 C.F.R. § 2560.503-1(g)(1)(ii), § 2560.501-1(l)(1). Defendant responds that the Third Circuit in *Mirza* "did not interpret 29 C.F.R. § 2560.503-1(g)(1) with respect to exhausting administrative remedies" and that such an interpretation, which would grant a party six years to file an administrative appeal, defies common sense. Def. Reply at 11-12.

Since the Court has already found that dismissal of the Complaint is warranted due to Plaintiff's failure to state a plausible claim under section 502(1)(a)(B), the Court need not rule definitively on the issue of the exhaustion of administrative remedies. The Court notes, however, that both the Plan and the explanation of benefits clearly indicate that Plaintiff had 180 days to appeal the decision. Am. Compl., Ex. A. at 117; D.E. 30-4 at 3. The explanation of benefits, issued on August 25, 2017, states: "You must submit your appeal within 180 calendar days after the statement date on this EOB. If you fail to submit your appeal within this timeframe, your appeal will be rejected and the initial decision will be upheld." D.E. 30-4 at 3. Plaintiff fails to directly address Defendant's arguments regarding the plain language of the Plan and whether *Mirza* addressed 29 C.F.R. § 2560.503-1(g)(1) with respect to exhausting administrative remedies. Plaintiff shall have the opportunity, if Plaintiff so chooses, to address the issues of exhaustion of administrative remedies, among others, in a Second Amended Complaint.

## V. CONCLUSION

For the reasons stated above, the motion to dismiss filed by Defendant, D.E. 30, is GRANTED in part and DENIED in part. Plaintiff's claims are dismissed without prejudice to allow Plaintiff an opportunity to file a Second Amended Complaint. Plaintiff has thirty (30) days to file a Second Amended Complaint, if he so chooses, consistent with this Opinion. If Plaintiff fails to file a Second Amended Complaint, this matter will be dismissed with prejudice. An appropriate Order accompanies this Opinion.

Dated: September 20, 2019

John Michael Vazquez, U.S.D.J.